UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THERESA D. BURNETT, | § | |
| Plaintiff | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:11-CV-01189 |
| | § | |
| TAX EASE FUNDING, L.P., | § | |
| Defendant | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Theresa D. Burnett, Plaintiff herein, and moves this Court for a summary judgment on both of her claims against the Defendant, Tax Ease Funding, L.P., pursuant to Fed.R.Civ.P. 56(a) and in support thereof would show the following:

**Table of Contents**

*Page*

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.      Statement of Nature and Stage of Proceeding . . . . . . . . . . . . . . . . . . . . . . . . 5

II.     Statement of Issues and Applicable Standards of Review . . . . . . . . . . . . . . . . .6

III.    Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

IV.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      When TILA applies to a transaction . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

        B.      Undisputed facts on TILA applicability . . . . . . . . . . . . . . . . . . . . . . . . . . .10

        C.      Burnett's payment of tax obligations through a Tax Ease loan
                constitutes the extension of "credit," making TILA applicable . . . . . . . . 12

        D.      HOEPA applies to Burnett loan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.   Tax Code § 32.06(d-1) applies to the Burnett loan . . . . . . . . . . . . . . . . 18

F.   Tax Ease failed to give adequate advance peak notice under HOEPA . .19

G.   By failing to provide an adequate advance peak notice under
     HOEPA, the time for rescinding was extended from 3 days to 3 years . .22

H.   Since Tax Ease failed to recognize Burnett's timely notice of
     rescission, Burnett is entitled to an order compelling rescission and
     awarding $4,000 in statutory damages. . . . . . . . . . . . . . . . . . . . . . . . . . .23

I.   Implementation of rescission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

V.   Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## Table of Citations

*Cases*                                                                    *Page*

*A.H. Phillips, Inc. v. Walling*,
 324 U.S. 490 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Beggs v. Rossi*,
 145 F.3d 511 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Belini v. Washington Mutual Bank, F.S.B.*,
 412 F.3d 17 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Bilal v. Household Finance Corp.*,
 296 B.R. 828 (Bank. D. Kan. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Bynum v. Equitable Mortgage Group*,
 2005 U.S. Dist. LEXIS 6363 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Celotex Corporation v. Catrett*,
 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Clay v. Johnson*,
 264 F.3d 744 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dawson v. Thomas*,
 411 B.R. 1 (Bank. D.D.C. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23, 24, 25

*Edwards v. Your Credit, Inc.*,
148 F.3d 427 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

*Fairley v. Turan-Foley Imports, Inc.*,
65 F.3d 475 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

*Fortune v. American Window & Siding Systems, Inc.*,
2010 Bankr. LEXIS 4142 (Bank. D. Kan. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23, 25

*Frazile v. EMC Mortgage Corporation*,
382 Fed.Appx. 833 (11th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gerasta v. U.S. Building Materials Co., Inc.*,
575 F.2d 580 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Harris v. Tower Loan of Mississippi, Inc.*,
609 F.2d 120 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

*Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*,
36 F.3d 177 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Horton v. California Credit Corp. Retirement Plan*,
2011 U.S. Dist. LEXIS 141421 (S.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*In re Community Bank of Northern Virginia*,
622 F.3d 275 (3rd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Kizzee-Jordan*,
626 F.3d 239 (5th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*In re Ralls*,
230 B.R. 508 (Bank. E.D.Pa. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24, 25

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
543 U.S. 50 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Long v. Merrifield Town Center Limited Partnership*,
611 F.3d 240 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mayfield v. Vanguard Sav. & Loan Ass'n*,
710 F.Supp. 143 (E.D. Pa. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Moore v. Cycon Enterprises, Inc.*,
2007 U.S. Dist. LEXIS 9423 (W.D. Mich. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Newton v. United Companies Financial Corp.*,
24 F.Supp.2d 444 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

*O'Brien v. Cleveland*,
423 B.R. 477 (Bank. D. N.J. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18, 23

*Pollice v. National Tax Funding, L.P.*,
  225 F.3d 379 (3rd Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 13, 14, 15

*Staub v. Harris*,
  626 F.2d 275 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shepeard v. Quality Siding & Window Factory, Inc.*,
  730 F.Supp. 1295 (D.Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Sterten v. Option One Mortgage Corp.*,
  352 B.R. 380 (Bank. E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

*Templet v. HydroChem, Inc.*,
  367 F.3d 473 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Williams v. Homestake Mortgage Co.*,
  968 F.2d 1137 (11th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ysasi v. Nucentrix Broadband Networks, Inc.*,
  205 F.Supp.2d 683 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Statutes*

15 U.S.C. § 1602(aa) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

15 U.S.C. § 1602(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12

15 U.S.C. § 1602(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

15 U.S.C. § 1602(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

15 U.S.C. § 1602(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

15 U.S.C. § 1635 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8

15 U.S.C. § 1635(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

15 U.S.C. § 1635(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

15 U.S.C. § 1635(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

15 U.S.C. § 1635(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15 U.S.C. § 1639(a) and (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 8, 17, 19, 21, 22

15 U.S.C. § 1640(a)(2)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 23, 24

15 U.S.C. § 1640(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 24

Tex. Fin. Code § 351.001 et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Texas Tax Code § 32.06(d-1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 18, 19

Texas Tax Code § 32.06(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*Rules*

7 T.A.C. § 89.601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

12 C.F.R. § 226.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

12 C.F.R. § 226.2(a)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

12 C.F.R. § 226.2(a)(14) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 12

12 C.F.R. § 226.2(a)(17)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12 C.F.R. § 226.2(a)(17)(v) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

12 C.F.R. § 226.23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

12 C.F.R. § 226.23(a)(3), footnote 48 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

12 C.F.R. § 226.23(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

12 C.F.R. § 226.23(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

12 C.F.R. §§ 226.31(b)-(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

12 C.F.R. § 226.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

12 C.F.R. § 226.32(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

12 C.F.R. § 226.32(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

12 C.F.R. § 226.32(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20, 21

12 C.F.R. § 226.32(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Fed.R.Civ.P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Treatises*

Official Staff Commentary § 226.2(a)(14)-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12, 13

Official Staff Commentary § 226.23(a)(3)-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Truth In Lending* (National Consumer Law Center 7th ed.) § 2.4.9.1 . . . . . . . . . . . . . . . . . . . . . . . .16

## I.  Statement of Nature and Stage of Proceeding

1.  On October 18, 2010, Burnett sued Tax Ease Funding, L.P. ("Tax Ease") in state

district court for violating the Home Ownership and Equity Protection Act ("HOEPA")

and the Truth-in-Lending Act ("TILA"), which impose special disclosure requirements in high-fee and high-rate consumer loans secured by homesteads. This suit was later removed to this Court. See document no. 1. With leave of this Court, a second amended complaint was filed, raising a state law claim under Texas Tax Code § 32.06(d-1) which provides a right to cancel incorporating the one provided in TILA and HOEPA. See document nos. 24, 25, 27, 28.

2.     Tax Ease answered Burnett's complaints, asserting a number of affirmative defenses, currently including inapplicability of TILA, limitations, failure of conditions precedent, voluntary payment, estoppel and quasi-estoppel. First Amended Answer and Answer to Second Amended Complaint, document nos. 15 and 29.

3.     Under the original scheduling order, document no. 7, the deadline for dispositive and non-dispositive motions is January 20, 2012, the joint pretrial order is due on April 20, 2012 and docket call is scheduled for April 27, 2012. By an order dated January 19, 2012, this Court extended the motions deadline to January 24, 2012. See document nos. 30 and 31.

## II.     Statement of Issues and Applicable Standard of Review

4.     Generally, the issues raised by this motion relate to whether Burnett has established the elements of her two causes of action, one a federal claim brought under TILA and HOEPA and another being a state claim under Texas Tax Code § 32.06(d-1). More specifically, it is anticipated that the primary issues in dispute involve (1) whether TILA applies to a loan made to pay off a tax obligation, (2) whether an adequate HOEPA advance peak notice was given and (3) what form of tender is

required, if any, to obtain rescission.

5.      Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."     Fed.R.Civ.P. 56(a).     A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant.     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).     Initially, the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact.     *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).     If the movant meets its burden, the nonmoving party must set forth specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings.     *Anderson*, 477 U.S. at 256-257.     Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists.     *Edwards*, 148 F.3d at 431-432.     The standard of review for the grant or denial of summary judgment is de novo.     *Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).

## III.    Summary of Argument

6.      The federal claim asserts that Burnett had an extended right to cancel her tax loan transaction with Tax Ease under section 1635 of TILA, because she did not receive an adequate advance peak notice required by section 1639(a).     As part of the HOEPA amendments to TILA, *In re Community Bank of Northern Virginia*, 622 F.3d 275, 282-283 (3rd Cir. 2010), section 1639(a), however, does not apply unless this is a high-fee or

high-rate loan. 15 U.S.C. §§ 1602(aa) and 1639(a) and (b). As a result, the failure of Tax Ease to recognize Burnett's notice of cancellation under section 1635 and to give an adequate section 1639 advance peak notice entitled her to an order rescinding the transaction under section 1635(g) and statutory damages and attorney's fees under section 1640(2)(A)(iv) and (3) of TILA. This means, at a minimum, that Burnett must establish that both TILA and HOEPA apply to the tax loan transaction at issue. Even if TILA does not apply, Burnett retains the right to rescind under Tex. Tax Code § 32.06(d-1).

## IV.    Argument

### A.    When TILA applies to a transaction

7.    Given that Burnett is asserting a violation of 15 U.S.C. § 1635 and seeks relief under 15 U.S.C. § 1640, sections of TILA, she must prove that Tax Ease is a "creditor." That term is defined in TILA at 15 U.S.C. § 1602(g), in pertinent part, as:

> . . . a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the indebtedness . . . .

Regulation Z further defines a "creditor" as "[a] person who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable . . . on the face of the note or contract . . . ." 12 C.F.R. § 226.2(a)(17)(i).

8.    On the first prong of the definition of creditor, "consumer credit" must be defined.

TILA states that "[t]he adjective consumer . . . characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services are primarily for personal, family, or household purposes," 15 U.S.C. § 1602(i), while Regulation Z at 12 C.F.R. § 226.1(a) defines a "consumer" as a ". . . natural person to whom consumer credit is offered or extended." TILA defines "credit" as ". . . the right granted by a creditor to a debtor to defer payment of a debt or to incur debt and defer its payment[,"] 15 U.S.C. § 1602(f), while Regulation Z at 12 C.F.R. § 226.2(a)(14) defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment." Combining these definitions, Regulation Z defines "consumer credit" as "credit offered or extended to a consumer primarily for personal, family, or household purposes." 12 C.F.R. § 226.2(a)(12).

9. On the first prong of the definition of creditor, "regularly extended" must also be defined. TILA itself addresses this issue directly by stating that "[a]ny person who originates 2 or more mortgages referred to in subsection (aa) of this section [or, in other words, a loan covered by HOEPA] in any 12-month period . . . ." Similarly, Regulation Z further provides that "[a] person regularly extends consumer credit only if it extended credit (other than credit subject to the requirements of § 226.32) more than 25 times (or more than 5 times for transactions secured by a dwelling) in the preceding calendar year . . . [or] the current calendar year[,] and "[a] person regularly extends consumer credit if, in any 12-month period, the person originates more than one credit extension that is subject to the requirements of § 226.32 . . . ." 12 C.F.R. § 226.2(a)(17)(v).

10. In short, to establish that TILA applies, Burnett must first establish that (1) Tax

Ease extends credit to natural persons, (2) the credit is primarily for personal, family or household purposes, (3) the credit is extended or offered regularly, and (4) the credit is subject to a finance charge or is payable in more than four installments. Put another way, whether a party "is a TILA creditor is a bifurcated question, requiring a person to be a 'creditor' in general, by extending credit in a certain number of transactions, and to be the 'creditor' in the specific transaction in dispute." *Ysasi v. Nucentrix Broadband Networks, Inc.*, 205 F.Supp.2d 683, 687-688 (S.D. Tex. 2002), citing to *Police v. National Tax Funding, L.P.*, 225 F.3d 379, 411 (3rd Cir. 2000).

**B.    Undisputed facts on TILA applicability**

11.    On most of the prongs of the definition, there is no genuine issue of fact on whether Tax Ease is a "creditor." First of all, Tax Ease admits, through its representative, Susan Watson, that its transactions involve natural persons. Exhibit A, 61/1-22, 89/1-19, 111/5-18. It further refers to these individuals as "borrowers," refers to itself as a "lender," requires the people it does business with to sign notes and deeds of trust with Truth-in-Lending disclosures, and then pays taxing authorities amounts that are in default. Exhibit A, 67/15-20, 67/24-68/3, 89/1-8, 108/24-109/4, 111/5-12, 121/20-126/19. All of these statements suggest that these transactions involve the extension of credit, because they involve either "the right to defer payment of debt or to incur debt and defer its payment." Moreover, state law has treated these transactions as "loans" ever since they were first explicitly authorized by statute in 1995. Texas Tax Code § 32.06(e), as referenced in S.B. 1387, 1995 Tex. Gen Laws 131, 74th Regular Session, effective September 1, 1995 (authorizing tax lien transfers *and* imposing 18% interest

rate) and H.B. 2491, 2005 Tex. Gen Laws 1126, 79th Legislature (maintaining 18% interest rate but allowing loan to cover closing costs); Tex. Fin. Code § 351.001 et seq. (effective September 1, 2007, but no compliance required until March 1, 2008)(requiring "property tax lenders" making "property tax loans" to be licensed).

12.    Second, assuming these transactions involved the extension of debt, there is no doubt that Tax Ease regularly extended credit.    Tax Ease admitted that it engaged in more than 25 of these transactions in both calendar years 2006 and 2007.    Exhibit A, 111/13-112/8.    That meets the definition of "regularity" as set out in Regulation Z.    12 C.F.R. § 226.2(a)(17)(v).

13.    Third, Burnett sought and obtained this loan for a personal, family or household purpose.        Specifically, she sought the loan to pay off a property tax debt that threatened her home with foreclosure.    Burnett deposition, Exhibit B, 8/18-20, 9/4-10/4, 49/24-50/12.    Obtaining a loan "to satisfy an obligation on the borrower's home" is recognized as a "personal, family, or household purpose."    *Pollice*, 225 F.3d at 410. Accord: *Dawson v. Thomas*, 411 B.R. 1, 33-34 (Bank. D.D.C. 2008)(borrowing money "primarily for the purpose of saving her home from foreclosure . . . would seem to make this a 'consumer credit transaction . . . .'").

14.    Fourth, the promissory note and the Truth-in-Lending disclosure statement associated with the loan made by Tax Ease to Burnett establish that the credit extended is subject to a finance charge or is payable in more than four installments.    Exhibits C-D.    Specifically, these documents reflect that a finance charge of $9342.97 was charged, and there were 119 monthly installment payments of $125.18 expected to be

made.  *Id.*

**C.    Burnett's payment of tax obligations through a Tax Ease loan constitutes the extension of "credit," making TILA applicable.**

15.    According to its responses to discovery, Tax Ease denies that it is a "creditor" for two reasons only.   Tax Ease asserts that paying a property tax obligation on Burnett's home does not constitute a "personal, family or household" purpose nor does it constitute the extension of "credit."    See response to interrogatory number 2 of Plaintiff's second set of interrogatories, Exhibit E.   More specifically, Tax Ease takes the position that there was no extension of "credit" to Burnett in its loan transaction, because no "debt" was incurred in the transaction when the only payment was made to pay off a property tax obligation and, thus, Tax Ease did not grant Burnett a right to defer payment of a "debt."    *Id.*   This issue turns on whether Tax Ease was involved in the third-party financing of property tax obligations or whether it was merely directly collecting a tax debt.    Burnett asserts that Tax Ease's position is wrong and that it is, in fact, a third-party lender subject to TILA.

16.    While TILA and Regulation Z define "credit" as the right to defer payment of debt or to incur debt and defer its payment, 15 U.S.C. § 1602(f) and 12 C.F.R. § 226.2(a)(14), TILA does not define "debt."     In its Official Staff Commentary on Regulation Z, though, the Federal Reserve Board has excluded certain situations from the definition of credit.    Official Staff Commentary § 226.2(a)(14)-1 (found at http://ecfr.gpoaccess.gov/cgi/t/text/text-idx?c=ecfr&sid=fc2b1a5846af809d567c31034f5afe5c&rgn=div9&view=text&node=12:3.0.1.1.7.7.8.10.31&idno=12).   In particular, the Commentary states, in pertinent part, the

following:

> Tax liens, tax assessments, court judgments, and court approvals of reaffirmation of debts in bankruptcy [are not considered credit for purposes of the regulation]. However, third-party financing of such obligations (for example, a bank loan to pay off a tax lien) is credit for purposes of the regulation.

Official Staff Commentary § 226.2(a)(14)-1-ii. The FRB's Staff Commentary on Regulation Z is dispositive in TILA cases unless the commentary is demonstrably irrational, *Clay v. Johnson*, 264 F.3d 744, 748 (7th Cir. 2001), and there is no indication that the interpretation set forth above is irrational. The issue then is the transaction in this case is whether is merely directly collecting an assigned tax obligation or provided financing to pay off the tax obligation.

17.     In the one case to consider the tax obligation exclusion to TILA coverage, the Third Circuit considered whether National Tax Funding, L.P. ("NTF"), an entity which purchased unpaid property tax debts and liens from three local governments and sought to collect only the interest and penalties that the governmental entities could collect on unpaid tax obligations, was covered. *Pollice*, 225 F.3d at 385-386, 409-411. After the commencement of collection efforts, NTF offered payment plans permitting homeowners to pay their tax debt, together with the interest and penalties owed under applicable tax law, over a period of 6 to 24 months rather than in a single lump sum. *Id*. at 386, 396-397. Nevertheless, the same interest and penalties were applied at the same rate to both homeowners who paid their tax debts in lump sums and those that agreed to payment plans. *Id*. at 397-398. A suit was then filed alleging that TILA had been violated. *Id*. at 386-387. Ultimately, the Third Circuit upheld a district court ruling that TILA was inapplicable, because property tax obligations were not "debts" and, thus,

no "credit," as that term is defined in TILA, was extended in connection with the extended payment plans involving tax obligations. *Id*. at 409-411. Most importantly, though, the Third Circuit applied the Official Staff Commentary on tax obligations and found implicitly that NTF was not providing third-party financing. *Id*. at 410.[1]

18.     *Pollice*, though, is distinguishable and Tax Ease is effectively making a loan to pay off a tax obligation.   First, Tax Ease does not merely buy unpaid tax claims and liens from governmental entities, as did NTF.    Initially, it must enter into a loan transaction with its customers *before* it pays the amount owed on property tax obligations and receives a transfer of the lien.    For example, its customers were required to sign a note, a deed of trust and other closing documents, and then, and only then, did Tax Ease pay the sums owed for property taxes.   Watson deposition, Exhibit A, 89/1-8, 121/20-124/10, 124/19-126/19.    Unlike NTF which sought to collect tax obligations whether the homeowners agreed to payment plans or not, Tax Ease does not even seek assignment of the tax obligation and lien *unless* its customers first agree to sign a note and a deed of trust.   In effect, it is the practice of Tax Ease to execute a loan transaction with its customers *before* it ever seeks to pay off the tax obligation and receive a transfer of the tax lien.

19.     Second, unlike NTF, Tax Ease agrees to pay whatever its customers then owe

---

[1] *Pollice* also ruled without citing any authority that, even though "debt" is not defined in TILA, this term should be construed as it is in the Fair Debt Collection Practices Act ("FDCPA") which explicitly defines "debt."   Courts have commonly ruled that tax debts are not covered debts under the FDCPA, 15 U.S.C. § 1692a(5), because tax obligations do not arise from any transaction involving the rendition of a service or the purchase of property. *Pollice*, 225 F.3d at 400-403; *Beggs v. Rossi*, 145 F.3d 511, 512 (2d Cir. 1998); *Staub v. Harris*, 626 F.2d 275, 278 (3d Cir. 1980).   These cases are distinguishable from the instant case, because this case involves a different statute with no definition for "debt," and the Federal Reserve Board has issued a commentary that addresses the issue head-on.  Here, the FRB has explicitly stated that, while tax obligations are not considered "credit" under TILA, third-party financing of such obligations is "credit."   In other words, the FRB Commentary should govern the issue here.

in terms of unpaid taxes, interest and penalties to the governmental entities, and then it assesses *additional* interest of up to 18% and closing costs to defer payment of that obligation. Tex. Tax Code § 32.06(e). In Burnett's transaction, Tax Ease paid $3,444.08 in unpaid taxes, $1,117.06 in penalties and interest, and $912.22 in attorney's fees to the various taxing entities. See tax receipt attached hereto as Exhibit F. As a part of the loan, Tax Ease also imposed closing costs of $1,659.06 and agreed to defer payment of this obligation over 10 years at the rate of $125.08 per month with a total finance charge of $9,342.97. See Truth-in-Lending statement marked as Exhibit D and settlement statement marked as Exhibit G. Of the closing costs, Tax Ease retained the origination fee of $215.01, the processing fee of $240 and the underwriting fee of $165, an administrative fee of $191 and a servicing set-up fee, or $991.01 out of a total of $1,659.36 with the remainder being paid to vendors. Exhibit A, 70/10-73/22, 75/5-20, 101/11-20; and the tax lien disbursement statement attached hereto as Exhibit H. By contrast, the governmental entities are allowed to charge interest at the rate of 1% per month or 12% per annum compared to the 18% allowable interest rate on "property tax loans," and the taxing entities have no right to charge closing costs, even if they enter into payment plans with homeowners. Compare Tex. Tax Code §§ 32.06(e)(allowing property tax lenders to charge 18% per annum interest) and 33.01(c)(allowing taxing entities to charge 1% per month interest on defaulted tax obligations) and 7 T.A.C. § 89.601(allowing licensed property tax lenders to charge various closing costs).

20. Third, unlike the transactions in *Pollice* which were not considered to be loans

under Pennsylvania law, see 225 F.3d at 392-396, the transactions between "property tax lenders" and homeowners who owe property taxes have been treated as loans in Texas. As noted previously, Texas has explicitly authorized these transactions and regulated the interest rate since 1995 and has required "property tax lenders" like Tax Ease to be licensed since 2007. See legislative history set forth in paragraph 11 above. Even Tax Ease refers to these transactions as "loans" and its customers as "borrowers," requires the people it does business with to sign notes and deeds of trust with Truth-in-Lending disclosures, and then pays taxing authorities amounts that are in default. Exhibit A, 67/15-20, 67/24-68/3, 89/1-8, 108/24-109/4, 111/5-12. Further, Tax Ease acknowledges that the taxing authorities no longer consider homeowners to owe them any sums after Tax Ease has paid these authorities. Exhibit A, 94/18-97/2, 97/20-98/7.

21. Fourth, to the extent there is any ambiguity on this question, this Court is obligated to construe TILA, as a remedial statute, liberally to protect borrowers. *Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 479 (5th Cir. 1995). As a corollary, exceptions to remedial legislation should be construed narrowly. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945); *Long v. Merrifield Town Center Limited Partnership*, 611 F.3d 240, 245 (4th Cir. 2010); *Hogar Agua Y Vida En El Desierto, Inc. v. Suarez-Medina*, 36 F.3d 177, 182 (1st Cir. 1994). The Commentary provision is in the nature of a *de facto* exemption for certain types of transactions, *Truth In Lending* (National Consumer Law Center 7th ed.) § 2.4.9.1, and it should be narrowly construed.

22. These factors demonstrate that Tax Ease made what would be considered a

third-party loan to Burnett to pay off her tax obligation.[2]   Tax Ease's current position

that TILA is inapplicable

### D.   HOEPA applies to the Burnett loan.

23.   HOEPA imposes a duty on "creditors" to give an advance peak notice in certain

high-fee and high-rate mortgage transactions. 15 U.S.C. § 1639(a)-(b).   In 2007,

HOEPA applied to a consumer credit transactions (1) that were secured by the

consumer's principal dwelling, (2) not including a purchase money mortgage, a reverse

mortgage, or an open end credit plan (such as a home equity line of credit, also known

as a "HELOC"), and (3) assessing an APR that exceeded the yield on Treasury

securities having comparable periods of maturity or total points and fees that exceed

8% of the total loan amount in first lien loans or 10% of the total loan amount for all

other loans.   15 U.S.C. § 1602(aa)(effective in 1997); 12 C.F.R. § 226.32(a).

24.   Assuming that the underlying transaction is a "consumer credit transaction," a

matter already addressed, HOEPA applies to the Burnett loan.   First, the loan is

---

[2] While the Fifth Circuit, in deciding whether a "tax claim" belonged to Tax Ease under Bankruptcy Code §
511, has held that Tax Ease obtained both the governmental entities' tax claims and tax liens upon
paying the sums owed to those entities, *In re Kizzee-Jordan*, 626 F.3d 239, 242-246 (5th Cir. 2010), that
case does not change the analysis here.   *Kizzee-Jordan* involved a different issue than the one before
this Court.   It resolved the question of whether a "property tax lender," such as Tax Ease, obtained both
the governmental entities' tax claim and tax lien or only the latter.   *Id.*   If the execution of the note by the
homeowner debtor changed the nature of the debt from a tax debt to a new loan debt, that debtor would
be free to modify the interest rate in a Chapter 13 plan.   *Id.*   By finding that the underlying debt remained
tax in nature, Tax Ease was entitled to avoid such modification and retain the higher contractual interest
rate set forth in the note signed by the debtor.   *Id.*   By contrast, the issue in this case is whether the Tax
Ease loan to Burnett was a "third-party financing" of the tax obligation.   Indeed, the Fifth Circuit opinion
suggests that it is, as it repeatedly referred to Tax Ease in that case as a "third-party lender" and "third-
party creditor."   *Id.* at 240 ("we must consider whether a third-party lender . . . holds a tax claim . . . ."),
243 ("[w]hat is not exactly clear . . . is whether a third-party creditor who pays the debtor's taxes continues
to hold a 'tax claim.'"), 244 ("[w]hether a third-party lender who pays a property owner's taxes in Texas
holds a tax claim . . . .").   Given that Tax Ease is neither a governmental entity with taxing authority nor a
homeowner and that it executes loan documents before making payments to governmental entities, these
characterizations of Tax Ease as a "third-party lender" are correct.

secured by a lien on Burnett's only home.[3]    Exhibit B, 5/4-7, 7/17-19, 8/18-20, 9/20-10/4; Truth-in-Lending disclosure statement marked as Exhibit D (home address listed as security for loan); Deed of Trust attached hereto as Exhibit I (same), Declaration of Burnett attached as Exhibit J.    Second, this loan to pay unpaid property taxes is not a purchase money mortgage, a reverse mortgage, or an open end line of credit such as a HELOC.    See Exhibits C, D, H and I.    Third, the disclosed APR of 18.828% is well more than 10 percentage points higher than the yield on Treasury securities with comparable periods of maturity.    Truth-in-Lending disclosure statement attached hereto as Exhibit D; Declaration of Perez, Exhibit K (the highest yield for comparable-term Treasury securities in August of 2007 was 4.84% and 4.7% in September of 2007). See *O'Brien v. Cleveland*, 423 B.R. 477, 494-495 (Bank. D. N.J. 2010)(example of case where HOEPA found to apply based on interest prong).

### E.    Tex. Tax Code § 32.06(d-1) applies to the Burnett loan.

25.    Tex. Tax Code § 32.06(d-1) states that, as a matter of state law, "[a] right of rescission described by 12 C.F.R. Section 226.23 applies to a transfer under this section of a tax lien on residential property owned and used by the property owner for personal, family, or household purposes."    *Id.*    Applied to this case, this state statute provides Burnett with TILA's right to rescind in transactions in which (1) a tax lien is transferred under Tex. Tax Code § 32.06, (2) the property subject to the lien is residential property owned by Burnett, and (3) the property is used by Burnett for

---

[3]  With regard to HOEPA applicability, Tax Ease only asserts that there is no "consumer credit transaction."    See response to interrogatory number 4 of Plaintiff's second set of interrogatories, Exhibit E.    Tax Ease takes no position on whether the interest rate or cost and fees triggers have been met. Watson deposition, Exhibit A, 114/1-121/4.

personal, family, or household purposes.  *Id.*  Each of those elements is established by attached summary judgment evidence.  Exhibit B, 5/4-7, 7/17-19, 8/18-20, 9/20-10/4; Truth-in-Lending disclosure statement marked as Exhibit D (home address listed as security for loan); Deed of Trust attached hereto as Exhibit I (same); tax lien transfer affidavit and transfer of lien attached hereto as Exhibits L and M; current owner search attached hereto as Exhibit N; Declaration of Burnett attached hereto as Exhibit J.  As such, Burnett has the same right under state law to rescind the loan at issue as she has under TILA without having to establish that TILA applies, because section 32.06(d-1) incorporates TILA's right to rescind as set forth in Regulation Z, 12 C.F.R. § 226.23.

**F.     Tax Ease failed to give adequate advance peak notice under HOEPA.**

26.     Assuming HOEPA applies because Tax Ease meets the definition of a covered mortgage defined by 15 U.S.C. § 1602(aa)(effective in September of 2007) and 12 C.F.R. § 226.32(a), Tax Ease was required to give an advance peak notice that met the requirements of 15 U.S.C. § 1639(a)-(b) and 12 C.F.R. §§ 226.31(b)-(g) and 226.32(c). Tax Ease did not give a compliant advance peak notice.

27.     Tax Ease gave three disclosures through closing that arguably apply to the advance peak notice requirement through the date of closing on November 20, 2007, but none comply with the law.  Exhibit A, 76/25-78/22.  First, Tax Ease gave what it called a Section 32 disclosure as part of the initial loan application signed by Burnett on October 19, 2007.  Tax Ease Loan Application, attached hereto as Exhibit O, page 5. The disclosure under the heading of "REGULATION Z SECTION 32 NOTICE" does provide the explicit notice required by 15 U.S.C. § 1639(a)(1) and 12 C.F.R. §

226.32(c)(1).   Exhibit O, page 5.   It fails, however, to accurately disclose the regular payment and the amount borrowed, because the disclosures at closing are substantially different.   Compare Exhibit D, the Truth-in-Lending disclosure at closing, with Exhibit O, page 5 and see Exhibit A, 46/24-47/6.   Specifically, this "Section 32 Notice" discloses the amount of the regular monthly payment as $111.68, and yet the regular monthly payment disclosed at closing was $125.18.   Compare Exhibit O, page 5, with Exhibit D, the 11/20/07 Truth-in-Lending Disclosure Statement.   As such, this purported advance peak notice does not comply with 15 U.S.C. § 1639(a)(2)(A) and 12 C.F.R. § 226.32(c)(3).[4]   *Fortune v. American Window & Siding Systems, Inc.*, 2010 Bankr. LEXIS 4142, *27-31 (Bank. D. Kan. 2010)(finding a similar inaccuracy on the monthly payment amount to be in violation of HOEPA).

28.   Second, Tax Ease has produced a letter that it asserts was sent to Burnett on November 14, 2007, 6 days before closing.   See Exhibit P marked also as TE 33-39. Burnett, however, does not recall receiving this letter.   Exhibit B, 52/11-18.   Whether Burnett received this letter or not, though, it is inadequate as well.   This letter contains a disclosure of the estimated APR as 18.802% and the regular monthly payment as $125.83, while the APR disclosed at closing was 18.828% and the regular monthly payment was $125.18.   Compare the Truth In Lending Disclosure Statement, part of Exhibit P with the Truth-in-Lending Disclosure Statement at closing, Exhibit D.   While

---

[4] Moreover, this 10/19/07 "Section 32 Notice" discloses the "amount borrowed," which refers to the face amount of the note according to 12 C.F.R. § 226.32(c)(5), as $6,974.81, and yet the face amount of the note executed at closing on November 20, 2007 was $7,818.43, a difference of over $800.   Compare Exhibit N, page 5, with the Real Estate Lien Note signed on November 20, 2007 attached hereto as Exhibit C and see Watson deposition, Exhibit A, 46/24-47.24, 52/13-25.   Since the differential is more than $100, the 10/19/07 "Section 32 Notice" does not comply with 12 C.F.R. § 226.32(c)(5).   Similarly, since the "amount borrowed" is not accurate, the "regular payment" disclosure cannot be considered accurate under the second sentence of 12 C.F.R. § 226.32(c)(3).

the minor inaccuracies appear to be within the tolerances for accuracy set forth in 12 C.F.R. § 226.22, 226.31(g) and 226.32(c)(3), this disclosure does not provide the specific disclosures required by 15 U.S.C. § 1639(a)(1) and 12 C.F.R. § 226.32(c)(1). Those disclosures were required to be made again, because, once there was a change in terms that occurs after a Section 32 notice is given, "new disclosures shall be provided in accordance with the requirements of this subpart [that necessarily includes the disclosures required by section 226.32(c)(1)]." 12 C.F.R. § 226.31(c)(1)(i). Put another way, "[a]fter providing the disclosures required by . . . section [1639], a creditor may not change the terms of the extension of credit if such changes make the disclosures inaccurate, unless new disclosures are provided that meet the requirements of this section [which includes section 1639(a)(1)]." 15 U.S.C. § 1639(b)(2)(A). Here, the amount borrowed changed from $6,974.81 from October 19, 2007 to $7,818.43 at closing on November 20, 2007. See footnote 4 above; Exhibit A, 43/6-45/16, 57/4-12. Under 12 C.F.R. § 226.31(c)(1)(i) and 15 U.S.C. § 1639(b)(2)(A), this significant change in terms required the giving of a whole new advance peak notice which was not done. *Fortune,* 2010 Bankr. LEXIS 4142 at *19 ("HOEPA also requires new disclosures to be provided if the creditor makes any changes to the terms of the extension of credit that make the previous disclosures inaccurate.").

29.     Third, Tax Ease gave another so-called Section 32 disclosure as part of the final loan application signed by Burnett at closing on November 20, 2007. See page 5 of Tax Ease Loan Application attached hereto as Exhibit Q. While this Section 32 notice gave the notice required by 15 U.S.C. § 1639(a) and 12 C.F.R. § 226.32(c)(1) and

adequately disclosed the APR and the regular payment as required by 15 U.S.C. § 1639(a)(2)(A) and 12 C.F.R. § 226.32(c)(2)-(3), this disclosure was not timely.   Under 15 U.S.C. § 1639(b)(1) and 12 C.F.R. § 226.31(c)(1), the full notice must be given at least 3 business days before closing.   As such, this third notice given at closing, as here, is not timely, because it does not constitute advance notice.

30.   While the violation here may appear to be technical, that violation has consequences under TILA, because strict compliance is required.   *Edwards*, 148 F.3d at 432; *Fairley*, 65 F.3d at 479.   Consequently, Tax Ease has failed to give the advance peak notice required by HOEPA.

> **G.   Since an adequate advance peak notice under 15 U.S.C. § 1639(a)-(b) was not given, the time rescinding was extended from 3 days to 3 years.**

31.   Under 15 U.S.C. § 1635(a) and (f), the obligor on a consumer credit transaction secured by a lien on the obligor's principal dwelling has the right to rescind the transaction for three business days after closing or the date on which the obligor received all of her material TILA disclosures, not to exceed 3 years.   TILA and Regulation Z define the "material disclosures" in closed-end credit as including, *inter alia*, the disclosures referred to in 15 U.S.C. § 1639(a) and 26 C.F.R. § 226.32(c).   15 U.S.C. § 1602(v); 12 C.F.R. § 226.23(a)(3), footnote 48; Official Staff Commentary § 226.23(a)(3)-2.   Assuming Burnett never received a pre-closing notice which complied with 26 C.F.R. § 226.32(c), Tax Ease failed to provide material disclosures, thereby extending the time for Burnett to exercise right to cancel.   A number of courts have recognized that the failure to give pre-closing notices compliant with § 226.32 entitled

the consumer to an extended time to cancel, not to exceed three years. *Fortune*, 2010 Bankr. LEXIS 4142 at *27-31; *O'Brien*, 423 B.R. at 497; *Dawson*, 411 B.R. at 31-35, 39-40; *Bynum v. Equitable Mortgage Group*, 2005 U.S. Dist. LEXIS 6363, *20, 30 (D.D.C. 2005); *Newton v. United Companies Financial Corp.*, 24 F.Supp.2d 444, 451 (E.D. Pa. 1998). Since Burnett gave notice of cancellation on July 23, 2010, see paragraph 13 in both the Second Amended Complaint and the Answer to the Second Amended Complaint, document nos. 28 and 29, she gave timely notice of cancellation.

**H.   Since Tax Ease failed to recognize Burnett's timely notice of cancellation, Burnett is entitled to an order compelling rescission and awarding $4,000 in statutory damages.**

32.    Once it is found that there was a continuing right to rescind and that notice of rescission was given within 3 years, Burnett is entitled to an order finding she is entitled to rescission. *Horton v. California Credit Corp. Retirement Plan*, 2011 U.S. Dist. LEXIS 141421, *14-22 (S.D. Cal. 2011); *Fortune*, 2010 Bankr. LEXIS 4142 at *38-43; *McGee*, 692 F.Supp.2d at 1277; *Bynum*, 2005 U.S. Dist. LEXIS 6363 at *37-45; *Newton*, 24 F.Supp.2d at 451.

33.    In addition, when a borrower, as here, exercises a valid right to rescission, the creditor must take action within 20 days after receipt of the notice of rescission, returning the borrower's money and terminating its security interest.    15 U.S.C. § 1635(b). Failure on the part of the creditor to so respond to a valid notice of rescission constitutes a separate violation of TILA, actionable under 15 U.S.C. § 1640(a)(2)(A)(iv), for statutory damages. *Frazile v. EMC Mortgage Corporation*, 382 Fed.Appx. 833, 839 (11th Cir. 2010); *Belini v. Washington Mutual Bank, F.S.B.*, 412 F.3d 17, 24-25 (1st Cir.

2005); *Gerasta v. U.S. Building Materials Co., Inc.*, 575 F.2d 580, 583-584 (5th Cir. 1978). Here, the parties agree that Burnett gave notice of rescission on July 13, 2010, paragraph 13 of document nos. 28 and 29, and Tax Ease, by a letter dated August 11, 2010, explicitly refused "to cancel the security interest and return all consideration paid by your client." Declaration of Tsai, attached hereto as Exhibit R. Statutory damages under 15 U.S.C. § 1640(a)(2)(B)(iv) are calculated by doubling the finance charge and capping such damages at $4,000. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 62 (2004)("… closed-end mortgages are subject to a higher floor and ceiling . . . [and] the specification of statutory damages in clause (i) of twice the finance charge continues to apply to loans secured by real property as it does to loans secured by personal property"); *Dawson*, 411 B.R. at 46; *In re Rolls*, 230 B.R. 508, 522 (Bank. E.D.Pa. 1999). Since the finance charge in this case is $8,342.97, see Exhibit D, the statutory damage award under 15 U.S.C. § 1640(a)(2)(A)(iv) is capped at $4,000.00.

## I.    Implementation of Rescission

34.    Section 1635(b) of TILA governs the effect of rescinding. It provides, in pertinent part, as follows:

> When an obligor exercises his right to rescind . . ., he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such rescission. Within 20 days of receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. . . . Upon the performance of the creditor's obligations . . ., the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. . . . The procedures prescribed by this subsection shall apply except when otherwise ordered by a court.

35.     The sequence of rescission and tender set forth in section 1635(b) is a reordering of common law rules governing rescission.     *Williams v. Homestake Mortgage Co.*, 968 F.2d 1137, 1140-41 (11th Cir. 1992).    In short, under common law rescission, the rescinding party must first tender the money or property that he received under the agreement before the contract is considered void.     *Id.* at 1140.    Under section 1635(b), though, the consumer need merely notify the creditor of his intent to rescind, and the agreement is then automatically rescinded and the creditor must, ordinarily, tender first.    Id.    The Fifth Circuit long ago addressed this issue and held that "the [creditor's] duties are in no way conditional upon the [consumer's] tender of the loan proceeds."    *Gerasta*, 575 F.2d at 585.    With the 1980 amendments to TILA, however, Congress added a sentence at the end of Section 1635(b) which accorded the courts authority to modify this entire procedure.    *Williams*, 968 F.2d at 1139-1142.    In other words, the sequence of rescission and tender must be followed *unless* a court directs otherwise.    *Bynum*, 2005 U.S. Dist. LEXIS 6363 at *40.

36.     Assuming this Court intends on exercising its power to condition rescission on Burnett's tender, several equitable principles should be considered.    First, courts often allow creditors to set off their obligation to return money or property to debtors against the debtor's obligation to tender the loan proceeds.     *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120, 123 (5th Cir. 1980); *Fortune*, 2010 Bankr. LEXIS 4142 at *41; *Bilal v. Household Finance Corp.*, 296 B.R. 828, 839 (Bank. D. Kan. 2003); *Ralls*, 230 B.R. at 523-524.    Second, debtors are permitted to offset any statutory damages, and even attorney's fees, against the tender amount.    *Fortune*, 2010 Bankr. LEXIS

4142 at *42; *Dawson*, 411 B.R. at *44-45.   Third, there is no duty to tender finance or other charges.  *Moore v. Cycon Enterprises, Inc.*, 2007 U.S. Dist. LEXIS 9423, *8-16 (W.D. Mich. 2007); 12 C.F.R. § 226.23(d)(1).   Fourth, courts allow a time certain to tender the net loan proceeds and even permit tender to be made through installment payments.  *Dawson*, 411 B.R. at 43 (18 months given to sell home); *Sterten v. Option One Mortgage Corp.*, 352 B.R. 380, 387-388 (Bank. E.D. Pa. 2006); *Shepeard v. Quality Siding & Window Factory, Inc.*, 730 F.Supp. 1295, 1308 (D.Del. 1990)($199 per month); *Mayfield v. Vanguard Sav. & Loan Ass'n*, 710 F.Supp. 143, 149 (E.D. Pa. 1989)($171 per month).

37.     Applied to this case, we start with the amount financed, $8,342.97, as the gross tender amount.   It can be reduced first by the amount required to be tendered by the creditor under 12 C.F.R. § 226.23(d)(2), which amounts to $1,852.52.   Exhibit R.   That leaves a reduced sum of $6,490.45.   Next, a reduction can be made for the $4,000 statutory damage award, leaving a lessened sum of $2,490.45.   As the prevailing party on a TILA claim, Burnett is also entitled to attorney's fees under 15 U.S.C. § 1640(a)(3). Burnett's counsel represents that this award will far exceed this amount, see Declaration of Tomlinson, Exhibit S, and Burnett proposes that $2,490.45 of what she is owed in attorney's fees be set off against an anticipated attorney's fee award in excess of that amount.   If the Court should find that the attorney's fee award is not likely to cover the remaining balance, Burnett asks the Court for a reasonable time to tender the remaining net proceeds or be given the opportunity to make installment payments.

38.     If this Court should find that TILA or HOEPA do not apply to this case, there

would be no right to recover statutory damages or attorney's fees.   Burnett asserts that the net proceeds she should be required to tender is $6,490.45, reflecting the amount financed less the amount of payments to date, and that she should be given a reasonable time in which to tender the entire amount or be allowed to make installment payments.

## V.    Conclusion

39.    Burnett should prevail for the following reasons: (a) TILA and HOEPA apply to the Burnett property tax loan; (b) an adequate advance peak notice was not given; (c) the time for rescinding was extended beyond 3 days after closing to 3 years; (d) Burnett is entitled to rescind and recover $4,000 in statutory damages; and (e) no tender is necessary, as set-offs for the return of monies paid, statutory damages and attorney's fees exceed the loan proceeds.

**Prayer**

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays this Court to grant her motion for summary judgment and such other and further relief to which she may be entitled.

Respectfully submitted,
**Lone Star Legal Aid**
1415 Fannin Street
Houston, Texas 77002
713-652-0077, ext. 1154 and 1283
Fax: 713-652-3814
/s/ Richard Tomlinson
RICHARD TOMLINSON
State Bar No. 20123500
PATRICIA TSAI
State Bar No. 24044292
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been forwarded to opposing counsel electronically or via fax and/or First Class U.S. Mail on this the 23rd day of January, 2012 as follows:

Howard Marc Spector
Spector & Johnson, PLLC
12770 Coit Road, Suite 1100
Dallas, Texas 75251
Fax: 214/237-3380

/s/ Richard Tomlinson
Richard Tomlinson